UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HICKS ELECTRICAL CO., INC. | CIVIL ACTION NO. 15-cv-1059 |
| VERSUS | JUDGE HICKS |
| PACIFIC TECH-SAUER, INC. JV V, ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Hicks Electrical Co., Inc. ("Hicks") was a subcontractor on a construction project at the Barksdale Air Force Base. Hicks filed this action under the Miller Act against the general contractor and its payment sureties for more than $280,000 that Hicks alleges is unpaid under its subcontract. Before the court is a Motion to Transfer Venue (Doc. 24) filed by the defendants. For the reasons that follow, it is recommended that the motion be denied.

**Relevant Facts**

The Navy contracted with Pacific Tech-Sauer, Inc. JV V ("Sauer") to act as the general contractor on a project on federally-owned property at the Barksdale Air Force Base in Louisiana. Sauer subcontracted with Hicks to perform certain work on the project for $1,920,000. Hicks alleges that there were several change orders and directions to complete additional works, which brought the total amount of the subcontract to over $2,000,000. Hicks alleges that it performed its work as required and on a timely basis, but Sauer paid less than even the original amount of the subcontract, leaving a balance due of $284,276.41 plus

interest. Hicks filed this action under the Miller Act against Sauer and Sauer's payment sureties, Hartford Casualty Insurance Company and Federal Insurance Company.

Sauer filed an answer and raised as a defense that this case should be transferred to the Middle District of Florida based on a forum selection clause in the subcontract. Sauer also asserted a counterclaim against Hicks and the issuer of Hicks' performance bond. The counterclaim alleged that Hicks breached the subcontract by not prosecuting its work in a timely manner, which delayed completion of the project and caused Sauer damages in excess of $480,000. Accordingly, Sauer demanded setoff against the amount claimed by Hicks plus an award of more than $258,000 in damages. Sauer's bond issuers also filed answers.

The forum selection clause relied upon by Sauer is found in Article 11 of the subcontract. Article 11 is titled Dispute Resolution, and paragraph 11.1 is titled Initial Dispute Resolution. Subparagraph 11.1.1 states: "All unresolved claims, disputes and other matters in question between the Design-Builder (Sauer) and the Subcontractor (Hicks), except for those covered by in Subparagraph 5.3.2, shall be resolved in the manner provided in this Article 11." Subparagraph 5.3.2 addresses claims for which the owner (Navy) may be liable. No party argues that the disputes in this litigation fall under that provision.

Subparagraph 11.1.2 sets forth that manner of resolution for claims such as those presented in this case. It begins with a lengthy provision regarding how the subcontractor can submit claims for extra costs for which the owner may be liable. The second portion of the provision, relevant here, describes the process that applies if Sauer and Hicks have a dispute arising out of or relating to the agreement, but which does not involve the rights and

duties of the owner. That process begins by Hicks giving Sauer notice within 10 days of when a dispute arises. The subcontract goes on to state that if Hicks gives proper notice, Hicks "will attempt to settle the dispute in the first instance" with Sauer's project manager. If Hicks is dissatisfied with the response of the project manager, or if the project manager fails to provide a response within 30 days, Hicks may within the next 10 days "appeal to the next level of Design-Builder's management at Design-Builder's Jacksonville, Florida office for a decision."

The sentence that comes next in the subcontract is at the heart of this motion dispute. It states: "If Subcontractor is dissatisfied with such decision, either party may seek to have the dispute resolved in any court having jurisdiction over Design-Builder's office address written above." The paragraph goes on to state that Sauer has the option to invoke ADR methods, including arbitration, "instead of litigation in a court of law." The provision also sets forth rules in the event of arbitration and provides that the prevailing party in any ADR proceeding or legal proceeding is entitled to recover costs and reasonable attorney fees from the other party.

Paragraph 12.1 provides that the agreement is governed by the law in effect at the location of the project (Louisiana). It also states that the parties agree the subcontract was jointly drafted so shall be construed in a neutral manner and neither against nor in favor of either party.

**Analysis**

State laws generally provide that if a contractor on a private construction project defaults on a payment to a subcontractor, the subcontractor can secure a lien against the property and seek remedies under a private works act. Because a lien cannot attach to United States property, Congress passed the Miller Act in 1935 to provide a comparable remedy to subcontractors and other suppliers on government construction projects. The general contractor on most government projects must give the United States a payment bond, and subcontractors or others who provide goods and services on the project may sue on the bond for amounts that the contractor does not pay. 40 U.S.C. §§ 3131, 3133.

The Miller Act provides that a civil action "must be brought ... in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C. § 3133(b)(3)(B). This court is a proper venue under the statute. But the Fifth Circuit has held that the statute is "merely a venue requirement" and not jurisdictional. See In re Fireman's Fund Ins. Companies, Inc., 588 F.2d 93, 95 (5th Cir. 1979). The Miller Act venue provision exists for the convenience of the parties, but it is "subject to variation by their agreement" in the form of a forum selection clause. Id. Sauer argues that the parties to the subcontract varied from the basic venue provision by agreeing to venue exclusively in the Middle District of Florida (Jacksonville).

A forum selection clause may be enforced through a motion to transfer under 28 U.S.C. § 1404(a). Atlantic Marine Const. Co., Inc. v. U.S. District Court, 134 S.Ct. 568, 579 (2013). The statute provides that a district court, "for the convenience of the parties and

witnesses, in the interest of justice ... may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." § 1404(a).

Atlantic Marine explained that a valid forum selection clause requires courts to adjust their usual Section 1404(a) analysis in three ways. First, the plaintiff's choice of forum merits no weight. Rather, the plaintiff who defies a forum selection clause bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. Second, the court should not consider arguments about the parties' private interests (such as convenience to the parties and witnesses). Rather, the court considers only arguments about public interest factors that "will rarely defeat a transfer motion," with the practical result being that the forum selection clause will control except in unusual cases. Atlantic Marine, 134 S.Ct. at 581-82. Third, a transfer of venue pursuant to the clause will not carry with it the original venue's choice of law rules. Id. at 582.

The Fifth Circuit has long recognized "a sharp distinction between mandatory and permissive FSCs." Weber v. PACT XPP Technologies, AG, 811 F.3d 758, 768 (5th Cir. 2016). A mandatory clause "affirmatively requires that litigation arising from the contract be carried out in a given forum." Id. By contrast, a permissive clause "is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum." Id. "Only mandatory clauses justify transfer or dismissal." Id.

A party that lost a request to transfer venue based on a permissive forum selection clause recently petitioned the Fifth Circuit for an interlocutory appeal to visit whether

Page 5 of 12

Atlantic Marine changed the distinction. The Court found that there was no language in Atlantic Marine that rejected its long-standing distinction between mandatory and permissive clauses, so it elected to not hear the appeal. Waste Management of Louisiana, LLC v. Jefferson Parish, 594 Fed. Appx. 820 (5th Cir. 2014). The Fifth Circuit has also emphasized that it is the existence of a "mandatory, enforceable" forum selection clause that alters the analysis in the way described by Atlantic Marine. Weber, 811 F.3d at 767.

Thus, the initial question is whether the clause at issue is mandatory or permissive. The clause in Keaty v. Freeport Indonesia, Inc., 503 F.2d 955 (5th Cir. 1974) stated that the parties "submit to the jurisdiction of the courts of New York." The Fifth Circuit held that the provision demonstrated consent to jurisdiction of the New York courts, but it did not constitute a mandatory forum selection clause. Similarly, the clause in City of New Orleans v. Municipal Administrative Services, Inc., 376 F.3d 501 (5th Cir. 2004) provided that the contractor consented to the jurisdiction of the courts of the Parish of Orleans and waived any pleas of jurisdiction on account of his residence elsewhere. The issue was whether this clause barred the defendant from removing a case filed in Orleans Parish. The Fifth Circuit held that the clause did not demonstrate a clear and unequivocal waiver of the right to remove and was, at least, ambiguous.

Decisions that have found clauses mandatory have often done so because the clauses used express language such as only, must, shall, or exclusively. Bentley v. Mutual Benefits Corp., 237 F.Supp. 2d 699, 701 n. 5 (S.D. Miss. 2002) (collecting cases). The Bentley court examined a clause in which the parties said they "stipulate to venue in Broward County."

The court held that the clause reflected an agreement to a Broward County venue but did not exclude all other venues, so it was not mandatory.

The subcontract provides that all disputes "shall be resolved in the manner provided" in Article 11. Article 11 then sets forth a multi-step process for such resolutions. A claim is first presented to a project manager, and it can be appealed to Sauer's Jacksonville, Florida office. If the subcontractor is dissatisfied with that office's decision, "either party may seek to have the dispute resolved in any court having jurisdiction over [Sauer's] office address written above." Sauer also has the option to invoke arbitration in lieu of litigation.

Sauer argues that the subcontract provides for a progressive, mandatory dispute resolution process that allows Hicks to file a suit, but only in Jacksonville, Florida. Hicks responds that the provision that a party "may" seek to have the dispute resolved in a Florida court does not exclude the ability to file suit in another jurisdiction. Three district court decisions have addressed the identical contract language. Two agreed with Sauer that the provision is mandatory. One agreed with Hicks that it is permissive.

The first decision was U.S. ex rel. MDI Services, LLC v. Federal Ins. Co., 2014 WL 1576975 (M.D. Ala. 2014). The decision emphasized that the court must examine more than the isolated sentence or term "may" and must read each phrase in the context of all other provisions. The court noted that the subcontract provides "a progressive, mandatory dispute resolution process in the event of a dispute arising under the Subcontract." Id. at *3. The court held that, in the context of the dispute resolution process, "the term 'may' only applies

to whether MDI decides to pursue the dispute in court." If it does, it must file that suit in Florida.

Magistrate Judge Hayes, in the Monroe Division of this court, followed <u>MDI Services</u> in <u>U.S. ex rel. Twin City Electric, LLC v. Sauer, Inc.</u>, 2015 WL 5794139 (W.D. La. 2015). She added that the clause was mandatory because the agreement mandated that the subcontractor attempt to settle any disputes with Sauer first and, only after that process was satisfied, "may" the subcontractor seek to have the dispute resolved in the Florida court. These decisions, without saying so expressly, appear to place great significance on the mandatory language of the provision that all disputes "shall be resolved in the manner provided" in Article 11.

The same subcontract language was at issue in a case in the Lake Charles Division of this court. <u>RP Construction, LLC v. SMC Builders, Inc.</u>, 15-cv-2600. Magistrate Judge Kay issued a ruling that denied the motion to transfer venue. She reasoned that this court has personal "jurisdiction over" the general contractor's office regardless of location, and she envisioned multiple scenarios in which other state or federal courts could exercise jurisdiction over disputes involving a company at that address. Therefore the clause did not limit litigation to any particular forum other than those that might lack jurisdiction over the contractor. Magistrate Judge Kay's unpublished decision cited <u>Twin City</u> and <u>MDI</u> but reached a different result.

The parties appealed to Judge Trimble, who agreed with the magistrate judge that the motion to transfer venue should be denied. <u>RP Construction, LLC v. SMC Builders, Inc.</u>,

2016 WL2858961 (W. D. La. 2016).  He emphasized that the Fifth Circuit has consistently required that, to be mandatory, a forum selection clause must contain clear and unequivocal language demonstrating the parties' intent to establish an exclusive forum.  He held that the clause in the subcontract did not contain such clear and mandatory language.

A reasonable argument can be made that Article 11 of the subcontract provides the only means of dispute resolution.  It provides an informal ADR process and allows Sauer to invoke arbitration.  It also allows that, after the informal ADR process is complete, "either party may seek to have the dispute resolved in any court having jurisdiction over" Sauer's office address.  Reasonable persons could argue that this limits the venue of any such suit to a court whose territorial boundaries encompass Sauer's Jacksonville office.  But reasonable persons could also argue that it simply provides one venue where such a suit "may" be filed in addition to the statutorily provided venue for a Miller Act claim.  Even then, the reference to "any court having jurisdiction over" Sauer's office address is less than clear and exacting.

The clause is susceptible to more than one reasonable interpretation, which prevents it from being a clear and unequivocal limitation to a single forum to the exclusion of all others.  The principle operative clause does not contain words such as must, shall, only, or similar terms that are the hallmarks of those clauses that have been held to be mandatory.  Rather, the clause uses the term may, and it is only through reasonable but debatable consideration and incorporation of other provisions of the subcontract that the clause is

capable of being a mandatory limitation to a particular forum. The undersigned finds that, under these circumstances, the clause at issue is merely permissive.[1]

When a clause is permissive, the <u>Atlantic Marine</u> approach is not applicable. The court instead applies the traditional Section 1404(a) analysis that includes consideration of private interest factors such as relative ease of access to sources of proof, availability of compulsory process for attendance of witnesses, possibility of view of the premises, and other practical problems that make trial of a case expeditious and inexpensive. The court also considers public interest factors such as the administrative difficulties flowing from court congestion, the local interest in having localized interests decided at home, the familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws. <u>In re: Volkswagen of America, Inc,</u> 545 F.3d 304, 315 (5th Cir. 2008) (en banc). The burden in that traditional analysis is on the party seeking

---

[1] If a reviewing court disagrees and finds that the forum selection clause is mandatory, that will require consideration of alternative arguments raised by Hicks. For example, Hicks contends that the clause is void under a Louisiana statute that states that such forum selection clauses in construction contracts are "inequitable and against the public policy of this state" so are "null and void and unenforceable as against public policy." La. R.S. 9:2779. It appears this statute was not raised in the similar Louisiana cases cited above. Sauer responds that the Louisiana statute is preempted or displaced by federal law, which is not a settled issue. The law is also less than clear as to how to assess the validity and enforceability of a forum selection clause in a federal question case where state law would nullify the clause. <u>See</u>, e.g., <u>Barnett v. DynCorp. International, LLC</u>, ___ F.3d ___, 2016 WL 4010440 (5th Cir. 2016); <u>Martinez v. Bloomberg LP</u>, 740 F.3d 211 (2nd Cir. 2014); and Matthew J. Sorensen, <u>Enforcement of Forum-Selection Clauses in Federal Court after Atlantic Marine</u>, 82 Fordham L. Rev. 2521 (Apr. 2014).

the change of venue, and the plaintiff's choice should be respected unless the proposed transferee venue is clearly more convenient than the original venue. Id. at 314.

Sauer's motion does not attempt to make the case that consideration of the traditional Section 1404(a) factors warrant a change of venue to Florida. The construction project was performed in Louisiana, and Hicks is located in Louisiana. There is no connection between this dispute and Jacksonville, Florida other than it is Sauer's home office. That is not sufficient to warrant a transfer of venue from this court, which was chosen by the plaintiff and is a proper venue under the Miller Act.

Accordingly,

**IT IS RECOMMENDED** that the Defendants' **Motion to Transfer Venue (Doc. 24)** be **denied**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of August, 2016.

Mark L. Hornsby
U.S. Magistrate Judge